**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOYCE ROYSTER,              )
                                   )
        Plaintiff,          )
                                   )
        v.                )       Civil Action No. 12-244
                                   )
LAUREL HIGHLANDS SCHOOL   )
 DISTRICT,                 )
                                   )
        Defendant.     )

## MEMORANDUM OPINION

**CONTI, Chief District Judge**

      Pending before the Court is a motion for summary judgment filed by defendant Laurel Highlands School District (the "School District"). (ECF No. 28.)  The School District filed a brief (ECF No. 29) and a concise statement of material facts (ECF No. 30) in support of that motion.  Plaintiff, Joyce Royster ("Royster"), filed a brief in opposition to the motion. (ECF No. 33).  Royster also filed a counterstatement of material facts (ECF No. 34), to which the School District responded (ECF No. 35).  At the close of briefing, the parties filed a joint concise statement of material facts. (ECF No. 36.)  For the reasons set forth below, the motion will be granted and judgment will be entered in favor of the School District on all claims.

## I.      FACTUAL BACKGROUND

      All material facts set forth herein are undisputed unless otherwise indicated.  All disputed material facts are construed facts in favor of Royster, the nonmoving party.  Additional material facts may be discussed elsewhere in this memorandum opinion, in context.

Royster alleges that the School District failed to hire her in March 2011 as Superintendent of Schools due to her race, gender, and age in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(a) et seq. Royster seeks back and front pay, compensatory damages for pain and suffering, punitive damages, and attorneys' fees, as well as injunctive relief. (ECF No. 10 (Amended Complaint) at 8-10.) Royster is an African-American female born in 1948. (ECF No. 36 (Combined Concise Statement of Material Facts) ¶¶ 94-95.) The candidate hired as superintendent in 2011 was a Caucasian male in his forties. (Id. ¶ 96.)

Royster holds a Doctor of Education Degree and Superintendent and Principal Certifications. (ECF No. 36 ¶¶ 98-102.) She began teaching in 1971. (ECF No. 29-3 (Royster Curriculum Vitae) at A.125.) Royster retired in 2007 from her position as an administrator with the City of York School District in York, Pennsylvania, and thereafter became a resident of the School District. (ECF No. 36 ¶¶ 11-13.) Royster was never an employee of the School District. (Id. ¶ 2.) Since retiring, Royster has not been employed by any school district. (Id. ¶ 14.) Since retiring, Royster has not applied for permanent employment, with the exception of expressing interest in the School District's superintendent position. (Id. ¶¶ 73, 75.) Royster never held the position of Superintendent of Schools with any school district, although she obtained a Superintendent Certification from the University of Pittsburgh in 1999. (Id. ¶¶ 15, 99.) Royster never applied or sent a letter of intent for any superintendent position, with the exception of expressing interest in the School District's superintendent position. (Id. ¶ 76.)

The School District sought to appoint a new Superintendent of Schools during the 2010-2011 school year because the superintendent serving at that time, Dr. Gary Brain, would not be renewing his contract at the end of that school year. (Id. ¶¶ 16-18.) It was common knowledge in the community that Dr. Brain would not serve as superintendent after the 2010-2011 school year, and that a new superintendent would need to be hired. (ECF No. 36 ¶¶ 18, 114.) Dr. Brain recommended to the school board that it give consideration to three current employees of the School District before seeking any other applicants to fill his position. (Id. ¶¶ 22, 26, 29.) Dr. Brain personally worked with each of the candidates he recommended and confirmed that they were interested in being considered for the position. (Id. ¶¶ 27, 33.) Each candidate recommended by Dr. Brain held letters of eligibility to serve as superintendent, was qualified for the position, and received financial assistance from the school district in obtaining his advanced degree or certification papers. (Id. ¶¶ 22, 26, 28, 32, 36-38.) The school board unanimously agreed to first consider the three candidates recommended by Dr. Brain for the superintendent position, with the understanding that candidates outside of the School District would be sought if the internal candidates were unacceptable. (Id. ¶¶ 22-24, 32, 41-42; ECF No. 29-8 (Giachetti Depo.) at A.535-38; ECF No. 29-3 (1/20/11 School Board Meeting Minutes) at A.146.) All three candidates recommended by Dr. Brain were Caucasian males in their forties. (ECF No. 36 ¶¶ 96, 115-18.)

The school board met informally with the three internal candidates in December 2010 to discuss their backgrounds and interest in serving as superintendent. (Id. ¶¶ 34, 39.) In March 2011 one of the three candidates was hired as the new superintendent. (Id. ¶¶ 32, 70.) Two school board members voted against hiring the candidate because they considered the salary

to be too high. (Id. ¶¶ 71-72.)  The School District never posted the superintendent position within the School District, or externally advertised the position. (Id. ¶ 40.)  The school board never sought external candidates for the position, and never considered any candidate other than the three recommended by Dr. Brain. (Id. ¶¶ 32-35, 39, 41-42, 68.)  The five administrative position vacancies open within the School District immediately prior to the superintendent vacancy in 2011 were filled by promoting existing School District employees. (Id. ¶¶ 77, 78, 80, 82, 84, 86.)

In November 2010 Royster called school board member Beal, at her home, to discuss concerns Royster had regarding Royster's granddaughter, a student at the School District's middle school. (Id. ¶ 43; ECF No. 29-6 (Royster Depo.) at A.433-34, 438.)  During that conversation, Beal informed Royster that the School District would have a vacancy in the superintendent position and suggested that Royster submit a resume.  (ECF No. 36 ¶¶ 45, 136-38; ECF No. 29-6 at A.433-34.)  After speaking with school board member Beal, Royster went to the School District's administrative office to obtain an application packet or job description, and to ask whether the position had been filled yet. (ECF No. 36 ¶¶ 60-61; ECF No. 29-6 at A.431-32.)  Royster was told that no application packet existed and that the position had not been filled. (ECF No. 36 ¶ 61; ECF No. 29-6 at A.431-32.)  She was given the names and phone numbers of the current school board members. (ECF No. 36 ¶ 62.)

Between November and December 2010, Royster contacted seven of the nine school board members about the superintendent position. (Id. ¶¶ 63-64, 135-36.)  Of the seven board members to whom Royster spoke, one, Jacobs, explicitly informed Royster that the School

District was only considering internal candidates. (Id. ¶ 63.) Royster reports that the other school board members informed her that the position was "open," which Royster understood to mean that the School District had not yet hired a new superintendent and from which she "inferred…that [she] would have an opportunity to apply." (Id. ¶¶ 63-65; ECF No. 29-6 at A.442, 450-54.) Although Royster asserts that some board members "gave me the impression that it was an equal opportunity position," Royster failed to produce evidence indicating that any school board member informed Royster that the school board decided to consider external candidates for the open position of Superintendent of Schools. (ECF No. 36 ¶ 47-48, 138; ECF No. 29-6 at A.441-42.) Royster acknowledges explicitly that the superintendent position was never posted within the School District and was never advertised outside the School District. (ECF No. 36 ¶ 40.)

Despite this fact, in mid-January 2011 Royster mailed a letter and resume to school board president Angelo Giachetti, and handed those materials to school board member Beal at a local restaurant. (ECF No. 36 ¶¶ 50-52; ECF No. 29-6 at A.437.) Royster never sent those materials, or any other materials expressing interest in the position, to anyone other than Giachetti and Beal. (ECF No. 36 ¶ 53.) Upon receiving those materials Giachetti informed Royster that the School District was only considering internal candidates. (ECF No. 29-6 at A.455-58.) Dr. Brain, and the other seven school board members, never reviewed the materials Royster submitted to Beal and Giachetti, and the school board never discussed Royster's candidacy for the position of Superintendent of Schools. (ECF No. 36 ¶¶ 66, 125.)

## II.    LEGAL AUTHORITY

### A.  Summary Judgment Standards

Summary judgment is appropriate if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  In evaluating the motion, all factual inferences must be drawn in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The court asks whether there is a need for trial – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250.  In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party.  Id. at 248–49; Reeves v. Sanderson Plumbing Products., Inc., 530 U.S. 133, 150-51 (2000) (citing cases).

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment.  Celotex, 477 U.S. at 323; Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  A defendant who moves for

6

summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Id. at 322-23. Once the movant meets that burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Liberty Lobby, 477 U.S. at 247–48; Celotex, 477 U.S. at 323-25

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. . If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

The mere existence of a factual dispute will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact – that is, a fact that would affect the outcome of the suit under the governing substantive law – will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248. Even then, the dispute over the material fact must be

genuine, such that a reasonable jury could resolve it in the nonmoving party's favor.  Id. at 248-49.

### B.  **Employment Discrimination Standards**

For purposes of deciding the instant motion, the same legal standards apply to employment discrimination claims brought pursuant to 42 U.S.C. § 1981, Title VII, the ADEA, and the PHRA.[1] Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989) (same analysis applies to § 1981 and Title VII claims); Colwell v. Rite Aid Corp., 602 F.3d 495, 500 n.3 (3d Cir.  2010) (stating that ADEA and PHRA claims may be addressed collectively); Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009); Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000) (equating Title VII and PHRA analysis); Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999); Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).  As to each claim, ultimately, the plaintiff must prove that an employer treated her less favorably because of her race, age, or gender. Desert Palace, Inc. v. Costa, 539 U.S. 90, 92–93 (2003); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977).

---

[1]  Although the School District did not move separately for entry of judgment on Royster's § 1981, civil rights-based claims, because the legal tests and standards are the same, the material facts are the same, both parties considered the pending motion to be case dispositive, and the matter is fully briefed, the court's opinion applies with equal force to all legal claims made by Royster in this case.

Specifically, in the context of a failure to hire lawsuit, in order to establish a prima facie case, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she applied and was rejected despite being qualified; (4) under circumstances that raise an inference of discriminatory action, such as that the employer continued to seek out individuals with qualifications similar to plaintiff's to fill the position or filled the position with a person not of the plaintiff's protected class. See Sarullo, 352 F.3d at 797 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)); Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999). "The central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo, 352 F.3d at 798 (quotation marks omitted).

Once a plaintiff establishes a prima facie case, the prospective employer must put forth a legitimate nondiscriminatory reason for not hiring the candidate. Sarullo, 352 F.3d at 797. If the employer is able to articulate a legitimate reason for its action, then the presumption of discrimination has been rebutted and "the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones, 198 F.3d at 410.

To demonstrate pretext, a plaintiff must either: (1) offer evidence that casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact-finder could reasonably conclude that each reason was a fabrication, or (2) present evidence sufficient to support an inference that discrimination was more likely than not a motivating (with respect to race and gender claims) or determinative (with respect to age claims) factor in the

hiring decision.  <u>Doe v. C.A.R.S. Protection Plus, Inc.</u>, 527 F.3d 358, 370 (3d Cir. 2008); <u>Fuentes</u>

<u>v. Perskie</u>, 32 F.3d 759, 762 (3d Cir. 1994); <u>Hodczak v. Latrobe Specialty Steel Co.</u>, 761

F.Supp.2d 261, 268 (W.D. Pa. 2010) (J. McVerry).  To meet that burden, a plaintiff "cannot

simply show that the employer's decision was wrong or mistaken." <u>Fuentes</u>, 32 F.3d at 765.  The

fact that an employer made a poor or unwise decision does not make that decision

discriminatory. <u>See</u> <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 332 (3d Cir. 1995)

(stating that an employer may have any reason or no reason for its employment action, so long as

it is not a discriminatory reason).  Instead, evidence undermining an employer's proffered

legitimate reasons must be sufficient to "support an inference that the employer did not act for its

stated reasons." <u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 731 (3d Cir. 1995).

III.  **DISCUSSION**

The School District moved for summary judgment on the ground that Royster

failed to establish a <u>prima</u> <u>facie</u> case of race, gender, or age discrimination because, among other

things, she cannot produce evidence that would give rise to an inference of discrimination. (ECF

No. 29 at 9-12).  Specifically, the School District contends that Royster cannot show that she was

treated differently than similarly situated individuals who were not members of Royster's

protected classes. (<u>Id.</u> at 10-12).

The School District further asserts that even if Royster established a <u>prima</u> <u>facie</u>

case of race, gender, or age discrimination, the School District met its burden of demonstrating a

legitimate, nondiscriminatory reason for not hiring Royster, i.e., that only the three internal

candidates recommended by the outgoing superintendent were considered for the position. (<u>Id.</u> at

12-15). The School District argues that Royster cannot establish that this explanation is a pretext for race, gender, or age discrimination. (Id.)

Royster responds that she established a prima facie case of race, gender, or age discrimination because she was not hired under circumstances that give rise to an inference of discrimination. With respect to the prima facie case, Royster argues that each of the three Caucasian male candidates considered for the superintendent position were similarly situated to her because she proved that the School District's claim that the superintendent position was only open to internal candidates was untrue. (ECF No. 33 at 8-11.) Each of these three candidates was treated more favorably than Royster because the school board considered their qualifications, and ultimately hired one of them. With respect to pretext, Royster asserts that she presented ample evidence that the School District's proffered legitimate nondiscriminatory reason for not hiring her is not worthy of belief, including that: (1) the School District did not follow its own recruitment policies and procedures; (2) the School District interviewed an external candidate for an "internal-only" position in 2008; (3) the School District fabricated its alleged "policy" to "hire from within;" (4) school board members encouraged Royster to apply for the superintendent position; and (5) Dr. Brain expressed age-related bias in an 2008 newspaper article. (Id. at 11-16.)

## A. The *Prima Facie* Case

Title VII provides that "it shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2. The ADEA similarly provides that "[i]t shall be

unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age[.]" 29 U.S.C. § 623(a). Royster's § 1981 and PHRA claims involve these same legal principles. Patterson, 491 U.S. at 186; Colwell, 602 F.3d at 500 n.3; Brown, 581 F.3d at 181–82; Goosby, 228 F.3d at 317 n.3.

Here, the parties agree that there is no direct evidence of discrimination; therefore, the familiar burden-shifting framework of McDonnell Douglas must be used. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Smith v. City of Allentown, 589 F.3d 684, 691 (3d Cir. 2009) (holding that the United States Supreme Court's decision in Gross v. FBL Financial Services, 129 S.Ct. 2343 (2009), does not forbid applying McDonnell Douglas to age discrimination claims). Under McDonnell Douglas, a plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997) (citations omitted).

In this case, Royster must prove that: (1) she is a member of a protected class; (2) she was qualified for the position sought; (3) she applied and was rejected despite being qualified; (4) under circumstances that raise an inference of discriminatory action, including, but not limited to, the more favorable treatment of similarly situated individuals outside of Royster's protected class. Sarullo, 352 F.3d at 797; Jones, 198 F.3d at 410–11. There is no dispute that Royster, an African-American female over the age of 40, meets the requirements of the first prong. The School District does not dispute that Royster satisfies the second and third prongs. (ECF No. 29 at 10.) The School District contends, however, that Royster cannot satisfy the fourth prong of the prima facie case because she presented no similarly situated comparator

12

outside of her protected classes who was treated more favorably than her. (Id.) According to the School District, Royster cannot be similarly situated to the only three individuals who were considered for the position of superintendent because they were each employed by the School District at the time. (Id. at 11.)

Royster acknowledges that she has no direct evidence that she was not hired due to her race, gender, or age, and, that the more favorable treatment of similarly situated individuals outside of Royster's protected class is the only evidence in the record that could possibly raise an inference of discrimination in this case. (ECF No. 33 at 7, 9; ECF No. 36 ¶ 90.) Royster's sole comparators are the three individuals recommended by Dr. Brain to the school board. Royster alleges that these three individuals are viable comparators even though they were internal candidates because she "has thoroughly discredited [the School District's] claim that [Royster] was not interviewed or considered for the Superintendent position because [the School District] intended it to be an 'inside-applicant only' position." (ECF No. 33 at 9.) According to Royster, she discredited the School District's claim by proving two things: (1) that the School District interviewed an external candidate for the position of Federal Programs Coordinator in 2008 (id. at 9); and (2) that school board members told her that the superintendent position was "'open' and 'equal opportunity'" (id. at 10).

Because it is undisputed that the School District never considered any non-employee candidate for the position of superintendent, and because Royster admittedly offers no other evidence that could give rise to an inference of discrimination, if she is unable to establish

that the three internal candidates are viable comparators, she cannot satisfy her burden to prove a prima facie case.

Although the Court of Appeals for the Third Circuit has not explicitly stated what constitutes a similarly situated employee, it has accepted the standard used by other circuits that comparator employees must be similarly situated in all relevant respects. Wilcher v. Postmaster General, 441 F.App'x 879, 882 (3d Cir. 2011) (relying on Russell v. University of Toledo, 537 F.3d 596 (6th Cir. 2008) and Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–261 (5th Cir. 2009)). The Court of Appeals for the Third Circuit does not require a plaintiff to show that the comparators are identical in all relevant respects, but only that they are alike in all relevant respects. Borrell v. Bloomsburg Univ., No. 12-2123, 2013 WL 3287147, at *12 (M.D. Pa. Jun. 28, 2013); Mun. Revenue Services, Inc. v. McBlain, 347 F.App'x 817, 825 (3d Cir. 2009). "Determining whether an individual is 'similarly situated' to another individual is a case-by-case, fact-intensive inquiry," where "the focus is on the particular criteria or qualifications identified by the employer as the reason for" the employment decision. Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998); Chan v. Cnty. of Lancaster, No. 10-3424, 2011 WL 4478283, at *15 (E.D. Pa. Sept. 26, 2011) (citing Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004)).

As an initial matter, each candidate, being over the age of 40, is a member of the same protected class as Royster for purposes of her age discrimination claims. Each of the three Caucasian, male candidates, however, are "sufficiently younger" than Royster to permit an inference of age discrimination, if they are otherwise proper comparators. Barber v. CSX

Distribution Services., 68 F.3d 694, 699 (3d Cir. 1995) (finding eight-year age difference could be sufficient to permit inference of age discrimination); Russell v. Mercer Cnty. Ass'n for the Retarded, Civ. No. 10–242, 2011 WL 3610082, at *2 (W.D. Pa. Aug. 15, 2011) (Ambrose, J.) (same as to thirteen-year age difference). The court concludes, however, that the three Caucasian, male candidates that Dr. Brain recommended to the school board are not similarly situated to Royster because each was a then-current employee of the School District who received financial assistance from the School District in obtaining his advanced degree or certification papers. Royster was not a then-current employee of the School District, had never been an employee of the School District, and obtained her degrees and certifications without the financial assistance of the School District. These crucial dissimilarities between Royster and the three internal candidates prevent them from being "alike in all relevant respects," where the School District identified promotion of an existing employee as an important criteria or qualification for the superintendent position.

Royster's assertion that she "thoroughly discredited" the School District's proffered distinction between herself and the three internal candidates is not supported by the record. First, the fact that the School District interviewed an external candidate for the Federal Programs Coordinator position does not disprove the School District's assertion that it only considered internal applicants for the superintendent position. As an initial matter, the Federal Programs Coordinator position was filled in 2008, while the superintendent position was filled in 2011. (ECF No. 36 ¶¶ 77, 139; ECF No. 29-7 (Brain Depo.) at A.502.) The passage of time alone distinguishes the two circumstances. In addition, the positions are themselves distinguishable. Superintendent of Schools is the chief administrative position within a school

district and cannot be equated to any lesser administrative position. Finally, by Royster's own admission, the Federal Programs Coordinator position was internally advertised. (ECF No. 36 ¶ 140; ECF No. 29-7 at A.486-88, 502.) In contrast, the record is undisputed that the superintendent position was never advertised, even within the School District. (ECF No. 36 ¶ 40.) Instead, Dr. Brain personally pre-selected and recommended three internal candidates who were currently employed by the School District to the school board, which agreed to give initial consideration to Dr. Brain's candidates, and ultimately hired one of them. (Id. ¶¶ 22-24, 32-33, 70.) For all these reasons, the fact that the School District interviewed an external candidate in 2008 for the Federal Programs Coordinator position cannot "discredit" the School District's explanation that it failed to hire Royster because the superintendent position was open only to internal candidates, thereby making the three internal candidates valid comparators.

Likewise, Royster's contention that school board members told her that the superintendent position was "'open' and 'equal opportunity'" does not "discredit" the School District's explanation, such that the three internal candidates become similarly situated to Royster. As an initial matter, individual school board members cannot take action with respect to specifically enumerated activities, including appointing a superintendent, without a majority vote of the school board. 24 P.S. § 5-508; Berkheimer Associates, et al. v. Norco Motors, 842 A.2d 966 (Pa.Commw.Ct. 2004). Royster, who holds a doctorate in education, (ECF No. 29-3 at A.119; ECF No. 29-6 at A.400), has been an educator since 1971, (ECF No. 29-3 at A.119, 125; ECF No. 29-6 at A.386), and served as a principal and assistant principal, (ECF No. 29-3 at A.120-24; ECF No. 29-6 at A.389-90, 396-97), acknowledges her familiarity with this principle of Pennsylvania law. (ECF No. 29-6 at A.446-47.) Even if the court were to accept as true, as it

must at the summary judgment stage, that board member Beal encouraged Royster to apply for the superintendent position, and board president Giachetti assured Royster that she had an "equal opportunity to apply," these facts are legally inconsequential. (ECF No. 36 ¶¶ 134-35, 138.) Under Pennsylvania law, neither Beal nor Giachetti had the authority to open the superintendent vacancy to outside applicants when the school board voted to consider only internal candidates. Royster was aware of that fact.

Regardless, when the testimony and asserted material facts are considered, - even in the light most favorable to Royster - the record does not support a reasonable inference that outside candidates were ever sought for the position of Superintendent of Schools, or that Royster was ever told that they were. Instead, the record establishes that Royster actively and unilaterally pursued the superintendent position, which she was "very interested" in, after Beal informed her of the vacancy during a phone call that Royster initiated with Beal concerning problems that Royster's granddaughter was having at school. (ECF No. 36 ¶¶ 43-44; ECF No. 29-6 at A.433-34, 439, 449.) In pursuit of the job, Royster visited the School District's office, called seven of the nine school board members to inquire about the position, called Beal periodically to ask if the position had been filled, "developed [her] own packet to apply" when the School District did not provide her with an application packet, a job posting, or a position description, and mailed that packet to Giachetti and handed it to Beal at a local restaurant. (ECF No. 36 ¶¶ 47-48, 50-52, 60-65, 136-38; ECF No. 29-6 at A.431-35, 440-42, 448-55.)

The record contains no evidence that any school board member told Royster that the School District was seeking outside applicants for the superintendent position. Royster's own best evidence is that she "inferred" that she would be considered for the job based on her conversations with individual school board members. (ECF No. 36 ¶¶ 63-65; ECF No. 29-6 at A.442, 450-54.) In contrast, Royster acknowledges that board member Jacobs explicitly told her that only internal candidates were being considered, and that in response to receiving her self-developed application packet, board president Giachetti informed her that only internal candidates were being considered. (ECF No. 29-6 at A.453, 455-58.) A candidate's unilateral pursuit of a job opening, does not transform a position for which only pre-selected, internal candidates are being considered, at least initially, into a position for which external candidates are sought.

Contrary to Royster's assertions, the three Caucasian males considered for the position cannot be valid comparators on the ground that Royster "discredited" the School Board's explanation that it did not hire her because she was not an internal candidate. The record supports only one reasonable conclusion - only internal candidates were considered for the superintendent position. Royster was an external candidate, and is unable to identify any similarly situated external candidate who was considered for the job. Contrary to Royster's contention, no reasonable juror could find the School District's explanation to be fabricated because an external candidate was interviewed for a different job in 2008 or because Royster sought information about the superintendent position from individual school board members and unilaterally sent an application packet to two of them. The record is undisputed that the School District never considered any individual, of whatever race, gender, or age, for the position of

Superintendent of Schools who was not employed by the School District at the time. As such, the record is devoid of similarly situated comparators.

Royster's inability to show that similarly situated comparators outside of her protected classes were treated more favorably than she was would not be fatal to her discrimination claims if she presented any other evidence that could give rise to an inference of unlawful discrimination. Royster did not. On this record, no reasonable juror could conclude that the School District failed to hire Royster under circumstances that raise an inference of discrimination. Royster failed to prove her <u>prima</u> <u>facie</u> case, making entry of judgment as a matter of law on each of her discrimination claims in favor of the School District warranted.

### B.  <u>The School District's Legitimate Nondiscriminatory Reason and Pretext</u>

Assuming, <u>arguendo</u>, that Royster established a <u>prima</u> <u>facie</u> case of race, gender, or age discrimination, the School District articulated a legitimate, nondiscriminatory, reason for not hiring her: Royster was not an employee of the School District.

Because the School District offered a legitimate, nondiscriminatory reason for not hiring her, Royster has the burden of proving by a preponderance of the evidence that this was not the School District's true reason, but was instead pretext for discrimination. <u>Jones</u>, 198 F.3d at 410.

> [T]o defeat summary judgment when the [employer] [articulates] legitimate nondiscriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Fuentes, 32 F.3d at 764; see Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 370 (3d Cir. 2008) (plaintiff's evidence must allow a fact-finder reasonably to infer that the proffered nondiscriminatory reason was either a post hoc fabrication or otherwise did not actually motivate the employment action).

Prong one of the Fuentes test focuses on whether a plaintiff submitted evidence from which a fact-finder could reasonably disbelieve a defendant's articulated legitimate reasons for its employment decision. Under this prong, the plaintiff must point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' ...and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Fuentes, 32 F.3d at 765 (internal citations omitted). The question at prong one of the Fuentes test "is not whether the employer made the best, or even a sound, business decision;" it is whether the real reason for the employment decisions is discrimination. Keller v. ORIX Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

Prong two of the Fuentes test permits a plaintiff to survive summary judgment if she can demonstrate, through evidence of record, that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes, 32 F.3d at 762. The kinds of evidence relied upon by the Court of Appeals for the Third Circuit under this prong of the Fuentes analysis are: 1) whether the employer previously discriminated against the plaintiff; 2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class; and 3) whether the employer has previously

treated more favorably similarly situated persons not within the protected class. <u>Simpson</u>, 142 F.3d at 644–45 (3d Cir. 1998).

The two prongs of the <u>Fuentes</u> test are distinct and, where appropriate, will be analyzed separately to determine whether sufficient evidence was presented to defeat a motion for summary judgment.

Royster contends that she presented ample evidence of pretext, including: (1) that the School District did not follow recruitment policies and procedures; (2) that the School District interviewed an external candidate for an "internal-only" position in 2008; (3) that the School District had no policy to "hire from within;" (4) that school board members encouraged Royster to apply for the superintendent position; and (5) that Dr. Brain expressed age-related bias in an 2008 newspaper article. (ECF No. 33 at 11-16.) Royster acknowledges that she utilizes some of the same evidence to make out a <u>prima facie</u> case and to discredit the School District's proffered legitimate nondiscriminatory reason for not hiring her. (<u>Id.</u> at 11.) Although not explicitly stated by either party, all this evidence is directed to the first prong of the <u>Fuentes</u> test. The court concludes that Royster failed to meet her burden to submit sufficient evidence from which a fact-finder could reasonably find that the School District's articulated legitimate reason for not hiring her is so implausible, weak, and incoherent that it must infer that the School District acted, instead, for discriminatory reasons.

### 1. *Fuentes* **Test: Prong One**

The court will not revisit the second and fourth items on Royster's list. For the same reasons that interviewing an external candidate in 2008 and communicating with individual school board members could not align Royster with the three internal candidates such that their

more favorable treatment could be used to raise an inference of discrimination for purposes of establishing a prima facie case, they cannot demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the School District's proffered legitimate reason for its action that a reasonable jury could find the reason "unworthy of credence." The court discusses each of Royster's other arguments in turn, but concludes that none of them provide sufficient evidence to support a reasonable jury finding that the School District's legitimate, nondiscriminatory reason is so implausible that it is unworthy of belief, and that discrimination was the real reason for the School District's decision to not hire her.

Recruitment Policy Violation: Royster argues that the School District's failure to follow its own recruitment policy establishes pretext. (ECF No. 33 at 12.) The recruitment policy at issue is Laurel Highlands School District Policy 302, entitled Employment of superintendent ("Policy 302"). (ECF No. 29-3 at A.175.) Policy 302 is a standard Pennsylvania School Board Association policy used by school boards in hiring superintendents. (ECF No. 36 ¶ 113.) Policy 302 is written in both mandatory and permissive language. (ECF No. 29-3 at A.175-76.) The relevant portions of the Policy that include mandatory language require school boards to: (1) "actively seek the best qualified and most capable candidate for the position of Superintendent;" (2) prepare recruitment procedures in advance of the search; and (3) establish a screening process "that ensures the Board has an opportunity to interview a sufficient number of finalist candidates so that an appropriate range of choices is available for final selection." (Id.)

Each of these requirements is subjective, and non-specific. For instance, although recruitment procedures are to be prepared in advance, there is no requirement that they be in writing or take any particular form. (Id.) In this case, the school board's decision to interview initially the

three candidates recommended by Dr. Brain, before seeking other candidates, would presumably satisfy the requirement. Likewise, although the Policy speaks to identifying the "best qualified" candidate and to providing a "sufficient number of candidates" to the board for consideration, there are no benchmarks set forth for satisfying those requirements. (Id.) For example, "best qualified" is not defined by reference to degrees held, years of experience, breadth of experience, or geographic desirability. Policy 302, on its face, does not prohibit a school district from assigning great weight to a candidate's experience in, and employment by, a school district in evaluating superintendent canddiates. A "sufficient number of candidates" is undefined, and presumably can fluctuate depending on the circumstances. Given the aspirational and indefinite language used in Policy 302, it is difficult to identify a violation of it.

Regardless, Royster's sole argument on this point is that Dr. Brain violated Policy 302 by refusing to consider her self-developed application packet when school board president Giachetti offered it to him. (ECF No. 33 at 13-14.) This argument is without legal significance and suffers from several flaws.

First, the exact policy that Royster attempts to use to establish pretext states explicitly and repeatedly that it is the school board that has the duty and responsibility to hire a superintendent, not the outgoing superintendent. (ECF No. 29-3 at A.175-76.) Although the record establishes that the board agreed with Dr. Brain's suggestion that the three internal candidates be given consideration first, it also establishes that the board retained the ability to seek additional candidates if it was not satisfied with Dr. Brain's recommendations. (Id. ¶¶ 22-24, 32, 41-42; ECF No. 29-8 (Giachetti Depo.) at A.535-38; ECF No. 29-3 (1/20/11 School

Board Meeting Minutes) at A.146.) Had the school board wished to consider Royster's candidacy, after having received her unsolicited application, it had the sole power and authority to do so. Royster makes no allegation, and presents no evidence, that Dr. Brain somehow prevented the school board from considering other candidates, including Royster.

Second, there is no evidence that either the school board's or Dr. Brain's refusal to consider Royster's application violates Policy 302. That Policy does not require that every submission, solicited or unsolicited, be considered, and does not even forbid internal-candidate-only superintendent searches. Policy 302 does not state that a greater number of candidates must be considered in order to identify the "best qualified" candidate. Royster's fundamental premise, i.e., that the "best qualified" candidate can only be identified if external applications are considered, is not supported by the terms of Policy 302 itself.

Finally, Royster's argument ultimately amounts to no more than a challenge to the soundness of the decision-making process engaged in by Dr. Brain and the board, which is legally irrelevant. According to Royster, had the School District cast a wider net, to specifically include her application, then the School District would have hired a "better" superintendent. It matters not to the legal analysis whether this is true. The question "is not whether the employer made the best, or even a sound, business decision," but whether the real reason for the employment decision is discrimination. Keller, 130 F.3d at 1109. The only question to be resolved by this court is whether a reasonable jury could conclude that the School District's proffered reason for not hiring Royster is a pretext for discrimination. The fact that an employer made a poor or unwise decision, assuming for purposes of this motion that affording primary

consideration to internal candidates is somehow unwise, does not make that decision

discriminatory. Brewer, 72 F.3d at 332; Sempier, 45 F.3d at 731. The alleged violation of Policy

302 advanced by Royster in this case cannot support a reasonable jury finding that the School

District's proffered reason for not hiring Royster, i.e., that she was not an internal candidate, is

not to be believed. Fuentes, 32 F.3d at 765.

Lack of a "hire from within" Practice: Royster next argues that the School

District's false assertion of "a practice of hiring from within" proves that the School District's

proffered legitimate nondiscriminatory reason for not hiring her is false. (ECF No. 33 at 15.)

According to Royster, there is no indication in the record that the School District "had any

'practice' of always hiring from within," and that, in any event, such a practice "would fly in the

face of Policy 302." (Id.)

As an initial matter, Policy 302 applies only to the hiring of superintendents. The

School District's factual assertions with respect to its preference to promote internal candidates

are not limited to hiring superintendents, making Royster's latter argument immaterial.

Secondly, Royster mischaracterizes the School District's position by citing to

only a single asserted statement of material fact. (Id., citing ECF No. 30 ¶ 25.) The School

District includes several statements of material fact, to which Royster admits, establishing that

the five administrative hires made prior to the superintendent position in dispute were internal

promotions. (ECF No. 36 ¶¶ 77-78, 80, 82, 84, 86, 88-89.) Whether this evidence rises to the

level of an employment "practice" or not is irrelevant; this undisputed evidence contradicts

Royster's argument that the School District fabricated its preference to promote current

employees solely for purposes of this litigation.  As such, Royster's argument in this regard is unsupported by the record and could not be the basis for a reasonable jury to disbelieve the School District's proffered legitimate nondiscriminatory reason for not hiring her.

Dr. Brain's 2008 Interview:  Royster's final evidence that would allegedly support a reasonable jury finding that the School District's legitimate nondiscriminatory reason for not hiring her is not to be believed is that Dr. Brain made a statement evidencing age-related bias. (ECF No. 33 at 15-16.)  Royster refers to a July 18, 2008 newspaper article in which Dr. Brain is quoted as saying " [w]e make a conscious effort to work with our staff, if we don't have people within the district, we look when we have people within the District, why look elsewhere, we work to give young administrators and teachers opportunities to improve themselves." (ECF No. 36 ¶ 142.)  No reasonable jury could conclude, based on this quote, that the School District refused to hire Royster because of her age.

First, Dr. Brain was not the decision-maker.  To reiterate, although there is no dispute that he suggested that the school board consider initially the three internal candidates he selected, the school board retained the right to seek additional candidates if necessary, and pursuant to Pennsylvania law, had the ultimate authority to select a superintendent. 24 P.S. § 5-508; (ECF No. 36 ¶¶ 22-24, 26-29, 32, 36-38, 41-42, 120; ECF No. 29-8 (Giachetti Depo.) at A.535-38; ECF No. 29-3 (1/20/11 School Board Meeting Minutes) at A.146.)  The remark was made more than two and a half years before the superintendent position was filled, and was unrelated to the superintendent hiring process on 2011.  Such remarks are rarely given weight in establishing discrimination.  Ezold v. Wolf, Block, Schorr and Solis–Cohen, 983 F.2d 509, 545

(3d Cir. 1992).  Under the circumstances of this case, the remark, standing alone, cannot support a reasonable jury's finding that the School District's legitimate, nondiscriminatory reason is not worthy of belief.

Second, as a factual matter, the quote does not evince a bias against older employees.  It, instead, reflects a bias in favor of promoting existing employees, which is the School District's precise legitimate, nondiscriminatory reason for not hiring Royster.   Although Dr. Brain expresses the School District's preference by referring to the promotion of "young" employees, the overall context of the passage speaks to grooming existing employees to rise through the ranks throughout their careers.  The word "young" cannot be segregated from the remainder of Dr. Brain's statement, and considered in isolation.   No reasonable juror could conclude based on this comment in a newspaper article published years before the employment decision at issue, in light of the totality of the record, that the School District's legitimate nondiscriminatory reason for not hiring Royster as superintendent is not to be believed and that the real reason Royster was not hired was age discrimination.

## 2.  *Fuentes* Test: Prong Two

Even though Royster failed to produce evidence that would support a reasonable jury finding under the first prong of the <u>Fuentes</u> test, Royster can survive summary judgment if, under the second prong of the <u>Fuentes</u> test, she can demonstrate that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." <u>Fuentes</u>, 32 F.3d at 762.  Royster can do so by showing that: 1) the School District previously discriminated against her; 2) the School District has discriminated against other persons within

27

any protected class; or 3) the School District previously treated more favorably similarly situated persons not within Royster's protected classes. <u>Simpson</u>, 142 F.3d at 644–45 (3d Cir.1998). Royster does not specifically address this second prong of the <u>Fuentes</u> test, and accordingly, fails to identify any evidence pertinent to these three considerations. The court will nevertheless consider the evidence of record in light of each of them to determine whether Royster's claim could possibly survive summary judgment under prong two of the <u>Fuentes</u> test. In doing so, the court reiterates that having failed to establish a <u>prima facie</u> case, the court does so only for purposes of argument with respect to the pending motion.

With respect to the first consideration, there is no evidence of record that the School District discriminated against Royster prior to the incidents giving rise to the current lawsuit.

With respect to the second consideration, there is no evidence of record that the School District discriminated against any other person on the basis of their race, gender, or age, or any other protected characteristic prior to the incidents giving rise to the current lawsuit. Although Royster alleges that Dr. Brain made a public comment evidencing age-related bias in 2008, the record is devoid of any evidence that the comment was associated with the discriminatory treatment of any particular individual. A reasonable jury could not conclude, based on Dr. Brain's comment, that the School District discriminated against any other person on the basis of their age.

With respect to the third consideration, there is no evidence of record that the School District treated more favorably similarly situated persons not within Royster's protected

classes prior to the incidents giving rise to the current lawsuit. Royster made reference to an external candidate who was interviewed for the internal-only Federal Programs Coordinator position. That candidate was within Royster's same protected classes with respect to gender, but outside of her protected class with respect to race. (ECF No. 36 ¶ 77, 139-40; ECF No. 29-7 (Brain Depo.) at A.486-88.) The record does not readily reflect that candidate's age. There is not sufficient evidence of record to determine whether that candidate was similarly situated to Royster, or whether that candidate was treated more favorably than Royster was.

Royster failed to present evidence under the second prong of <u>Fuentes</u> to prove that discrimination was more likely than not the reason the School District failed to hire her.

### C. <u>Summary of Legal Analysis</u>

The ultimate question before this court is whether Royster produced any evidence from which a reasonable juror could conclude that the School District's failure to hire her was based on her race, gender, or age. The court concludes that she has not. Royster failed to prove that she was not hired under circumstances that raise an inference of discriminatory action. Royster was unable to identify any similarly situated comparator, and presented no other evidence to support an inference of discriminatory action.

The School District proffered a legitimate nondiscriminatory reason for not hiring Royster, i.e., that only three internal candidates recommended by Dr. Brain were considered for the job. The record is devoid of any evidence from which a reasonable jury could conclude that the School District's explanation is unworthy of credence and was instead a post hoc fabrication developed to conceal its age, race or gender discrimination against Royster. The record is

likewise devoid of any other evidence from which a fact-finder could reasonably conclude that discrimination was more likely than not a motivating or determinative cause of the School District's failure to hire her.

IV.     **CONCLUSION**

For the reasons set forth above, the School District's motion for summary judgment will be granted.

An appropriate order follows.

Dated:  January 14, 2014                                   BY THE COURT:

                                                           /s/ *Joy Flowers Conti*
                                                           Joy Flowers Conti
                                                           Chief United States District Judge